**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TAYLOR FORREST et al.,**

               **Plaintiffs,**

      **v.**

**COUNTY OF GREENE et al.,**

               **Defendants.**

             **1:22-cv-276**
             **(GLS/ML)**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Fraiden & Fraiden LLP | MARK FRAIDEN, ESQ. |
| 327 East 149th Street | |
| Bronx, NY 10451 | |
| | |
| **FOR THE DEFENDANTS:** | |
| Murphy Burns LLP | THOMAS K. MURPHY, ESQ. |
| 407 Albany Shaker Road | |
| Loudonville, NY 12211 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

    Plaintiffs Taylor Forrest and Jimmy Diresta commenced this action

against defendants County of Greene, Sheriff of Greene County, Meghan

Downey, Charles Cole II, and Peter Kusminsky, in their individual and

official capacities, for violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, Article I, Section 12 of the New York Constitution, and New York State law.  (Am. Compl., Dkt. No. 12.) Pending before the court is a motion to dismiss the amended complaint filed by the County, Sheriff of Greene County, and Peter Kusminsky (hereinafter, collectively referred to as "the Moving Defendants").  (Dkt. No. 16.)  For the reasons that follow, the Moving Defendants' motion to dismiss is granted in part and denied in part.

## II. Background

### A.   Facts[1]

_____

[1] Consistent with the standard of review, the facts are drawn from the amended complaint and presented in the light most favorable to plaintiffs.  Additionally, facts are also draw from Exhibit 1 to the amended complaint which consists of a USB flash drive containing two video recordings titled "March 18, 2021" and "June 19, 2021" (hereinafter "the videos").  (Dkt. No. 12 at Ex. 1.)  The videos purport to contain audiovisual recordings that show interactions between plaintiffs and Downey and Cole.  While the scope of review on a motion to dismiss for failure to state a claim is generally limited to the content of the complaint, the court may consider "written instrument[s]" submitted with or incorporated by reference in a complaint.  Fed. R. Civ. P. 10(c).  The issue of whether audiovisual media may properly be considered a "written instrument" so as to fit within Rule 10(c) has not yet been determined in this Circuit.  _See Garcia v. Does_, 779 F.3d 84, 88, n.2 (2d Cir. 2015).  However, because no party contests the inclusion of the videos in the court's review of the amended complaint and the pending motion to dismiss, the court will

On March 28, 2021, at or around 1:44 A.M., Forrest was operating a vehicle, owned by Diresta, at or near Route 23 and Route 32 near the Town of Cairo, New York.  (Am. Compl. ¶¶ 34, 35.)  Diresta was a passenger in the vehicle.  (*Id.* ¶ 36.)  At the relevant time, Downey and Cole conducted a traffic stop, pulling the vehicle driven by Forrest over to the side of the road.  (*Id.* ¶ 37.)  The events at issue were recorded.  (*Id.* ¶¶ 54-55.)  As depicted in the videos, Downey, after walking to the driver's side window of the vehicle, informed plaintiffs that "I am pulling you over for your plate lamp, you have a plate lamp out."  (*Id.* at Ex. 1.[2])  Downey then requested that Forrest turn over her driver's license and the vehicle's registration.  (*Id.* ¶ 45.)  In response, Diresta asked if he could "get out of the car to check the plate lamp" to which Downey replied "sure."  (*Id.* at Ex.

---

consider the videos as part of the amended complaint.  *See Garcia v. Bloomberg*, No. 11-CV-6957, 2015 WL 5444122, at *2, n.1 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 662 F. App'x 50 (2d Cir. 2016) (explaining that a court may consider video recordings and photographic evidence on a motion to dismiss pursuant to Rule 12(b)(6), without converting the motion to one for summary judgment); *see also Norales v. Acevedo*, No. 21-549, 2022 WL 17958450, at *1 (2d Cir. 2022) (determining that the district court did not err in considering, among other things, surveillance video that was not incorporated by reference in the compliant because key allegations in the complaint rested on the content of said video).

[2]  A majority of the facts herein are drawn from the videos, as the factual allegations in the amended complaint itself are sparse.

1.)  Diresta exited the vehicle and walked towards the back of the vehicle, where Cole was standing.  (*Id.*)  After looking at the plate lamp, which appeared to be functioning properly, Diresta re-entered the vehicle and exclaimed: "the plate lamp is not out!"  (*Id.*)

Downey took Forrest's driver's license and the vehicle's registration, (*id.* ¶ 45); after approximately one minute and thirty seconds, Downey walked back to the driver's side of the vehicle to return the documents,  (*id.* at Ex. 1).  Downey apologized and informed plaintiffs that the stop was an "error."  (*Id.*)  Plaintiffs proceeded to argue with Downey about the circumstances of the stop and requested the badge numbers of both Downey and Cole.  (*Id.*)  Plaintiffs insisted that the stop was "for no reason," to which Downey again apologized and stated that "errors happen" before walking back to her patrol vehicle.  (*Id.*)

A few weeks later, on June 19, 2021, at approximately 2:00 A.M., Downey and Cole entered on to Diresta's property in a police patrol vehicle.  (*Id.* ¶ 56.)  Diresta recorded part of the events at issue.[3]  (*Id.* ¶¶ 64-65.)  Cole walked up to the entrance of a structure on Diresta's

---

[3] The video recording of these events is incorporated by reference into the amended complaint.

property, a large garage-style door, which was open.  (*Id.* at Ex. 1.)

Diresta, holding a camera, immediately confronted Cole, who was standing

outside of the garage-style door, and stated "please don't come in, just

stay there."  (*Id.*)  Cole remained outside of the structure and responded "I

just saw the door open, so I wanted to come check and make sure

everything was okay, I never see it open this late."  (*Id.*)  Diresta told Cole

that everything was "great" and Cole responded "no problem, have a good

night sir" and proceeded to walk back towards his patrol vehicle.  (*Id.*)

Diresta exited the structure, following Cole towards his patrol vehicle,

and noticed Downey was sitting in the passenger seat.  (*Id.*)  Downey

rolled down the passenger-side window and greeted Diresta, to which

Diresta responded, "remember you lied to me about my licence plate?  You

pulled us over."  (*Id.*)  Downey stated "sir, I apologize, it was a mistake,"

and Cole drove the vehicle off of Diresta's property.  (*Id.*)

**B.**  **Procedural History**

Plaintiffs commenced this action on February 28, 2022, in New York

State Supreme Court in Greene County.  (Dkt. No. 2.)  The action was

removed to this court.  (Dkt. No. 1.)  Defendants then filed a motion to

dismiss the complaint.  (Dkt. No. 5.)  Shortly thereafter, plaintiffs filed an

amended complaint asserting the following causes of action: 1) unlawful search and seizure under New York State law against all defendants; 2) unlawful search and seizure under 42 U.S.C. § 1983 against Kusminsky, Downey, and Cole (hereinafter, referred to collectively as "the Individual Defendants"); 3) false arrest and false imprisonment under New York State law against all defendants; 4) false arrest and false imprisonment under 42 U.S.C. § 1983 against Individual Defendants; 5) failure to intervene under New York State law against all defendants[4]; 6) failure to intervene under 42 U.S.C. § 1983 against Individual Defendants; 7) negligent hiring, training, retention, and supervision under New York State law against the County and Sheriff of Greene County; 8) negligent training and supervision under New York State law against the County and Sheriff of Greene County; and, 9) municipal "*Monell*" liability under 42 U.S.C. § 1983 against the County and the Sheriff of Greene County.  (Dkt. No. 12.)  Moving Defendants now

---

[4] As with the other causes of action, besides the claims under § 1983, plaintiffs do not specify exactly who their claim for failure to intervene under New York State law is against.  Construing the amended complaint in the light most favorable to plaintiffs, the court reads the amended complaint so as to assert the fifth cause of action against all defendants.

seek dismissal of the amended complaint.  (Dkt. No. 16.)[5]

Moving Defendants moved to dismiss, (Dkt. No. 16), which motion is now pending before this court, and Downey and Cole answered, (Dkt. No. 17).

### III. **Standard of Review**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated*

---

[5]  Plaintiffs annex three Exhibits to their response to the motion, which plaintiffs describe as follows: 1) Exhibit A "the transcript from . . . Diresta's 50-h hearing"; Exhibit B "the transcript from . . . Forrest's 50-h hearing"; and Exhibit C "the Notice of Claim."  (Dkt. No. 18, Attach. 1 at 4.) This evidence is outside of the complaint, and may not be considered unless the court, in its discretion, chooses to convert the pending motion to dismiss into a motion for summary judgment.  *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (citations omitted).  The court declines to convert the motion into a motion for summary judgment and, therefore, will not consider any evidence outside of the amended complaint, including Exhibits A, B, and C annexed to plaintiffs' response.

*on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## IV.  Discussion

### A.  Claims Against the Sheriff of Greene County

Moving Defendants seek dismissal of plaintiffs' claims against the Sheriff of Greene County[6] because such an agency is a subdivision of the County of Greene, and does not have a legal identity separate and apart from the municipality, so it is, therefore, as Moving Defendants assert, not amendable to suit.  (Dkt. No. 16, Attach. 2 at 2-3.)  Plaintiffs briefly address this issue, arguing that Moving Defendants "fail[ed] to submit a verified answer or an affidavit of a person with knowledge of the facts who can attest to the fact that the defendant Sheriff of Greene County is not an independent entity" and "fail[ed] to cite any statutory authority stating the

_____

[6]  Plaintiffs name the "Sheriff of Greene County" as a defendant, which, in the context of the complaint, refers to the Greene County Sheriff's Office, and not the individual who holds the title of "Sheriff" of the County of Greene.  Plaintiffs have named the title-holder, Sheriff Peter Kusminsky, as a separate defendant, and pleaded facts that indicate their intent that "Sheriff of Greene County" refer to the office and not a title-holder.  Therefore, "Sheriff of Greene County" is treated as equivalent to the Greene County Sheriff's Office for the purposes of the pending motion.

Sheriff of Greene County is not an independent entity."  (Dkt. No. 18, Attach. 1 at 22.)

Federal courts apply state law to determine whether an entity has capacity to be sued.  *See* Fed. R. Civ. P. 17(b).  "Under New York law, a county is a municipal corporation capable of bringing suit and being sued." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing  N.Y. Gen. Mun. Law § 2)).  However, a sheriff's department or a police department is an administrative arm of the municipal corporation and does not have a separate identity from the municipality.  *See id.; Long v. City of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021).  Because a sheriff's department "does not exist separate and apart from the municipality and does not have its own legal identity," it cannot sue or be sued.  *Baker*, 42 F. Supp. 2d at 198.  *See Jenkins v. Onondaga Cnty. Sheriff's Dep't*, No. 5:12-CV-855, 2012 WL 4491134, at *2 (N.D.N.Y. June 28, 2012) ("[U]nder New York law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued.").

The amended complaint explicitly alleges that the Sheriff of Greene

9

County is a "department," "bureau," "office," "unit," and "subdivision" of the County (Am. Compl. ¶¶ 5-9), and lacks factual allegations to support that it is an independent entity.  Therefore, all claims asserted against the Sheriff of Greene County are dismissed because it is not amendable to suit.

**B.   _Monell_ Liability**

Moving Defendants contend that the _Monell_ claim should be dismissed because the amended complaint only contains "boilerplate language" that does not provide specific information or factual allegations sufficient to support it.  (Dkt. No. 16, Attach. 2 at 5-8.)  Additionally, Moving Defendants argue that plaintiffs did not identify a specific policy, procedure, or custom, which is required to properly state a _Monell_ claim.  (_Id._ at 7.) The only incidents alleged in support of an inference that an unconstitutional policy, custom, or practice promulgated by the County exists, Moving Defendants argue, are the isolated events of this case, which cannot establish municipal liability.  (_Id._ at 6-8.)

Plaintiffs respond by arguing two theories in support of their _Monell_ claim: 1) "a practice so persistent and widespread, or permanent and well settled, as to constitute a custom or usage with force of law and to imply the constructive knowledge of policymaking officials," otherwise known as

a *de facto* policy; and 2) "by a failure to train or supervise subordinates amounting to deliberate indifference to the [rights] of those with whom the municipalities [sic] employees come into contact."  (Dkt. No. 18, Attach. 1 at 18-19.)  In the amended complaint, plaintiffs also allege that the County acted with "deliberate indifference," which is a third theory upon which *Monell* liability may be founded.  (Am. Compl. ¶¶ 155, 161.)  Plaintiffs support these theories with a comment made by Diresta to Forrest in the videos: that he believed the stop was without cause and was a pretext for Downey and Cole to check to see if Forrest had been drinking.  (*Id.* at 19.)[7]

A municipality may be liable under § 1983  "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see Dixon v. City of Syracuse*, 493 F. Supp. 3d. 30, 36 (N.D.N.Y. 2020) ("[T]he constitutional violation underpinning a § 1983 claim against a municipality must result from a governmental policy, custom or practice." (citation

---

[7]  Plaintiffs also quote from "Exhibit A" to their response to support this argument.  (Dkt. No. 18, Attach. 1 at 19.)  However, for reasons already stated herein, evidence outside of the amended complaint, including Exhibit A, were excluded from consideration.

omitted)).  To establish a municipal policy, practice, or custom, a plaintiff must allege evidence of (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes "a custom or usage"; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates.  *Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006) (citations omitted). "Boilerplate statements" that county employees were acting in accord with a municipal policy, with no facts to support those statements, are not sufficient to support a *Monell* claim.  *See Brown v. Oneida County*, No. 6:15-CV-0849, 2016 WL 4275727, at *4 (N.D.N.Y. Aug. 12, 2016).

To properly plead a *de facto* policy or custom through a widespread practice, a plaintiff must "show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions" based on governmental reports documenting constitutional deficiency that are "sufficiently connected to the specific facts of the case" or complaints in other cases that contain similar allegations that involve factually similar misconduct, contemporaneous with the misconduct at issue, and result in an adjudication of liability.  *Buari v.*

*City of New York*, 530 F. Supp. 3d 356, 398-99 (S.D.N.Y. 2021).  It is not sufficient to merely plead that the isolated incidents of the present case imply the existence of a *de facto* policy.  See *Bird v. County of Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *11 (S.D.N.Y. June 23, 2022) ("'[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'") (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)).

To properly plead a *Monell* claim based upon a theory of failure to train or supervise, a plaintiff must "'identify a specific deficiency in the [municipality's] training program and establish that said deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'"  *Alwan v. City of New York*, 311 F. Supp. 3d 570, 579 (E.D.N.Y. 2018) (quoting *Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007)).  *See Buari*, 530 F. Supp. 3d at 400 (explaining that, after *Twombly* and *Iqbal*, a plaintiff must plead more than merely that a municipality's failure to train caused a constitutional violation).  The municipality may only be liable under the failure to train theory "'when [municipal] policymakers are on actual or constructive notice that a

particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights . . . [but] the policymakers choose to retain that program.'"  *Buari*, 530 F. Supp. 3d at 399 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  While there is no bright-line test for how many civil rights complaints must occur to adequately put a municipality on requisite notice, recurring complaints can suffice.  *See id.*

"Municipal liability can also be based on a showing of 'deliberate indifference' to a recurring situation likely to result in a constitutional violation."  *Buari*, 530 F. Supp. 3d at 399.  To show this, a plaintiff must plead that the "local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."  *Id.* (internal quotation marks and citation omitted).

Here, plaintiffs' allegations are conclusory and do not properly plead a *Monell* claim under any of the aforementioned theories or standards. Specifically, plaintiffs allege that the County

> had in effect actual and/or *de facto* policies, practices, customs, and usages that caused the plaintiffs to be deprived of their civil rights or were deliberately indifferent toward the existence of such actual and/or *de facto* policies, practices, customs, and usages that were unconstitutional

and caused the plaintiffs to be deprived of their civil rights

(Am. Compl. ¶¶ 156-58).  Plaintiffs also assert that the County failed to

require its employees and agents, including the Individual Defendants, to

comply with said policies, practices, customs, and usages.  (*Id.*)  Plaintiffs

then list a number of "actual and/or *de facto* policies, practices, customs,

and usages" of the County, such as "stopping vehicles without reasonable

suspicion, probable cause, or justification" and "failing to supervise, train,

instruct, and discipline the sheriff and the sheriff's deputies thereby

encouraging misconduct and exhibiting deliberate indifference towards the

constitutional rights."  (*Id.* ¶ 162.)

However, plaintiffs fail to allege any facts, beyond the isolated events

that occurred on March 28 and June 19, 2021, from which a specific policy,

practice, custom, or usage could be inferred.  *See Ying Jing Gan v. City of*

*New York*, 996 F.2d 522, 536 (2d Cir. 1993) (affirming dismissal of *Monell*

claim where "[t]he complaint contained only conclusory and speculative

assertions" that the alleged conduct occurred "pursuant to the practice,

custom, policy and particular direction of" the supervisory official).

Plaintiffs' boilerplate allegations are insufficient to support a *Monell* claim.

*See Thomas v. City of Troy*, 293 F. Supp.3d 282, 298 (N.D.N.Y. 2018)

("For a *Monell* claim to survive a motion to dismiss, a plaintiff must allege sufficient factual detail and not mere boilerplate allegations that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy.") (internal quotation marks and citation omitted).  As such, plaintiffs have failed to meet the standard to plead a *Monell* claim.  For all of these reasons, plaintiffs' *Monell* claim must be dismissed, as well as all of plaintiffs' claims against the County premised on 42 U.S.C. § 1983.

## C.   Sheriff Kusminsky

Moving Defendants seek the dismissal of the § 1983  claims against Kusminsky, arguing that plaintiffs failed to allege he was personally involved.  (Dkt. No. 16, Attach. 2 at 3-4.)  Plaintiffs argue that they complained to "defendants County of Greene, Sheriff of Greene County, and Peter Kusminsky, concerning the occurrence on March 28, 2021, served a Notice of Duty to Preserve Evidence, and filed a Notice of Claim in connection therewith."  (Dkt. No. 18, Attach. 1 at 14.)  And that, despite these complaints, "subsequent violations of . . . Diresta's constitutional rights occurred."  (*Id.*)  Plaintiffs do not cite to where these facts are stated in the amended complaint, leaving the court to assume the reference is to

16

paragraphs 159 and 160 of plaintiffs' *Monell* claim.  (Am. Compl. ¶¶ 159-60.)

"It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, at *9 (N.D.N.Y. Jul. 29, 2020) (internal quotation marks and citations omitted).  As to supervisory liability, there is no "special test," and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  "To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights."  *Id.* at 618 (internal quotation marks and citation omitted).  It is not sufficient to plead that an official was "conceivably personally involved."  *Id.* at 615-16.

Plaintiffs do not allege any personal involvement by Kusminsky.  All of the allegations in the amended complaint regarding Kusminsky infer liability by virtue of his position as a supervisor and not any direct,

17

intentional, personal action by him.  (*See, e.g.*, Am. Compl. ¶¶ 40, 42, 43, 47, 49.)  There are no allegations that Kusminsky was present during the March 28 and June 19, 2021 incidents nor are there any that Kusminsky directed the conduct of Downey or Cole, or even that he knew of the alleged violations of plaintiffs' constitutional rights.  Plaintiffs also do not allege that they complained to Kusminsky directly; the amended complaint states that they "complained . . . to . . . Kusminsky through [his] agents, servants, and representatives."  (*Id.* ¶ 159.)  Plaintiffs' bare conclusion that Kusminsky must have been aware of the March 28, 2021 traffic stop and therefore violated plaintiffs' constitutional rights when Downey and Cole entered Diresta's property on June 19, 2021 is insufficient.  *See Santana v. Racette*, No. 9:17-CV-102, 2018 WL 10809035, at *5 (N.D.N.Y. Jan. 29, 2018) (dismissing claims against supervisory official where plaintiff alleged supervisor was "aware (from lawsuits, notices of claim, investigations, and complaints)" that corrections officers were insufficiently trained and aware that such improper training had resulted in deprivation of civil rights because plaintiff failed to allege facts that would allow an inference that the supervisory official was personally involved in the events at issue); *White v. Fischer*, No. 9:09-CV-240, 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18,

2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.")

Therefore, because plaintiffs have failed to sufficiently allege personal involvement, all claims against Kusminsky, brought under 42 U.S.C. § 1983 are dismissed.[8]

## D.   <u>Unlawful Search and Seizure Under New York State Law</u>

Finally, Moving Defendants seek dismissal of plaintiffs' first cause of action brought under the New York State Constitution for unlawful search and seizure because, they argue, plaintiffs have no private right of action when an action under 42 U.S.C. § 1983 is available.[9]  (Dkt. No. 16, Attach.

---

[8]  Moving Defendants state that "any cause of action against Sheriff Kusminsky must be dismissed," (Dkt. No. 16, Attach. 2 at 4), but, they have argued only for dismissal of § 1983  claims for lack of personal involvement, (*id.* at 3-4).

[9]  Moving Defendants state in their reply that "any such claims" under the New York State Constitution must be dismissed, for the first time.  (Dkt. No. 20 at 4-5.)  However, the motion only seeks dismissal of the unlawful search and seizure claim under this theory, not any of the other state-constitutional claims.  (Dkt. No. 16, Attach. 2 at 4-5.)  Because Moving Defendants' contention is raised for the first time in their reply, it is not properly before the court.  *See Varga v. Gen. Elec. Co.*, No. 1:18-CV-1449, 2020 WL 1064809, at *2 (N.D.N.Y. 2020), *aff'd*, 834 F. App'x 686

2 at 4-5.)  Plaintiffs respond with two arguments: 1) that they rely on the

doctrine of respondeat superior, which is not available under 42 U.S.C.

§ 1983 and, therefore, § 1983  does not offer an adequate alternative

remedy to their claim under the New York State Constitution; and 2) Article

I, Section 12 of the New York State Constitution provides greater

protections for traffic infraction stops than the United States Constitution,

therefore making certain claims under the New York State Constitution

unavailable under 42 U.S.C. § 1983.  (Dkt. No. 18, Attach. 1 at 9-11.)

###### 1.    *Respondeat Superior*

"Courts in this Circuit have 'uniformly held that no private right of

action exists for violations of the New York State Constitution where the

plaintiff has an alternative remedy under § 1983 for violations of parallel

provisions of the U.S. Constitution.'"  *Buari*, 530 F. Supp. 3d at 408

(quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586 (E.D.N.Y.

2018)).  In other words, when a claim is alleged under the United States

Constitution and a parallel State Constitution provision, the state-

---

(2d Cir. 2021) ("It is well-established that arguments may not be made for
the first time in a reply brief.  As such, new arguments first raised in reply
papers in support of a motion will not be considered.") (internal quotation
marks, alterations, and citations omitted).

constitutional claim must be dismissed unless the United States

Constitution does not offer an "adequate alternative remedy." *See Alwan*,

311 F. Supp. 3d at 586.  Both the Federal and the New York State

Constitution prohibit unreasonable searches and seizures, which, in theory,

requires dismissal of the state law claim. *Id.* at 585.  However, "[t]he case

law in this Circuit is split on the issue of whether [§] 1983 provides an

adequate alternative remedy for state constitutional claims predicated on a

theory of respondeat superior," because a § 1983  claim cannot be based

upon respondeat superior, while a New York Constitution claim may be.

*Isaac v. City of New York*, No. 16-CV-4729, 2018 WL 5020173, at *20,

n.25 (E.D.N.Y. Aug. 6, 2018), *report and recommendation adopted*, No.

16-CV-4729, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018) (citation

omitted); *compare  Alwan*, 311 F. Supp. 3d at 586, *with Wahad v. Federal

Bureau of Investigation*, 994 F. Supp. 237, 240, n.4 (S.D.N.Y. 1998).  The

recent caselaw in this Circuit indicates a trend towards holding that,

because § 1983 does not recognize respondeat superior liability, it does

not provide an adequate alternative remedy for state-constitution claims

when respondeat superior is alleged.  *See, e.g.*, *Barzilay v. City of New

York*, 610 F. Supp. 3d 544, 620 (S.D.N.Y. 2022); *Singletary v. Allen*, 588 F.

Supp. 3d 359, 368 (W.D.N.Y. 2022); *Buari*, 530 F. Supp. 3d at 408-09; *Logan v. City of Schenectady*, 2019 WL 3803631, at *9 (N.D.N.Y. Aug. 13, 2019).

The court recognizes the persuasive authority cited by Moving Defendants, which holds differently, however, the cases Moving Defendants rely upon are not factually analogous enough for the court to turn its back on the abundance of recent caselaw which favors plaintiffs' argument.  For example, in *Indig v. Village of Pomona*, the Southern District noted that the plaintiffs failed to specify in their pleading which defendants, if any, they sought to hold liable under the respondeat superior doctrine, whereas, here, respondeat superior is expressly alleged against the County in the amended complaint.  *See* No. 18-CV-10204, 2021 WL 3773653, at *2 (S.D.N.Y. Aug. 24, 2021); (Am. Compl. ¶¶ 83, 84.)

Based on the weight of precedent in this Circuit, it appears that § 1983 does not supply an adequate alternative remedy for plaintiffs' first cause of action.  Therefore, for these reasons, the motion is denied with respect to plaintiffs' first cause of action against the County.

2.   *Kusminsky*

22

As the theory of respondeat superior was only pleaded as to the County, (Am. Compl. ¶¶ 83-84), the first cause of action, to the extent it is alleged against the Individual Defendants, must be analyzed under plaintiffs' second argument, that the New York Constitution affords greater protection here than the Federal Constitution.  Relying on a criminal case decided by the New York Court of Appeals, plaintiffs assert that  "Article I, Section 12 of the New York Constitution provides 'greater protections than federal law for traffic infraction vehicle stops.'"  (Dkt. No. 18, Attach. 1 at 11 (citing *People v. Hinshaw*, 35 N.Y.3d 427 (2020).)  And, therefore, plaintiffs conclude that an action under § 1983 is not an adequate alternative remedy for a cause of action arising from a traffic stop under Section I, Article 12 of the New York State Constitution.  (*Id.*)

*Hinshaw*, analyzing a previous decision from the Court of Appeals, states that the court "had not hesitated to expand the rights of New York citizens beyond those required by the Federal Constitution."  *Id.* at 431 (citing *People v. Robinson*, 97 N.Y.2d (2001)).  However, *Hinshaw* and *Robinson* discuss search and seizure in the context of criminal trials.  *See generally Hinshaw*, 35 N.Y.3d 427; *Robinson*, 97 N.Y.2d 341.  Indeed, § 1983 is mentioned nowhere in either case.  *Id.*  These cases do not

23

demonstrate that an action under § 1983 would not provide plaintiffs adequate relief in the context of a civil action.

Additionally, in *Buari*, the Southern District held that state constitutional claims against the City of New York survived a motion to dismiss because § 1983  was not an adequate alternative remedy for state-constitutional claims that rely on the doctrine of respondeat superior. *See* 530 F. Supp. 3d at 409.  But the court found that these same claims could not be maintained against individual defendants because § 1983 provides an adequate remedy when the basis of liability is not respondeat superior.  *See id.*  Applied to the facts before the court, the first cause of action cannot be maintained against the Individual Defendants because plaintiffs do not seek to hold them liable under respondeat superior, and, therefore § 1983  provides an adequate alternative remedy.  *See Krug v. County of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (dismissing New York State Constitution claims, including for unlawful search and seizure, because the claims were also asserted as § 1983 claims and based upon the same factual allegations).

Accordingly, the motion is granted as to the first cause of action with respect to Kusminsky, the only individual defendant who has sought

dismissal.

### V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Moving Defendants' motion to dismiss (Dkt. No. 16)

is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** as to all claims against the Sheriff of Greene
>
> County; and
>
> **GRANTED** as to all § 1983 claims against the County and
>
> Kusminsky; and
>
> **GRANTED** as to plaintiffs' first cause of action for unlawful
>
> search and seizure under New York state law, only as against
>
> Kusminsky; and
>
> **DENIED** in all other respects; and it is further

**ORDERED** that the Clerk shall **TERMINATE** the Sheriff of Greene

County; and it is further

**ORDERED** that the following claims remain: (1) first cause of action

for unlawful search and seizure under New York law as against the

County, Downey, and Cole; (2) second cause of action for unlawful search

and seizure under § 1983 as against Downey and Cole; (3) third cause of

action for false arrest and false imprisonment under New York law as against the County, Downey, Cole, and Kusminsky; (4) fourth cause of action for false arrest and false imprisonment under § 1983 as against Downey and Cole; (5) fifth cause of action for failure to intervene under New York law as against the County, Downey, Cole, and Kusminsky; (6) sixth cause of action for failure to intervene under § 1983 as against Downey and Cole; (7) seventh cause of action for negligent hiring, training, retention, and supervision under New York law as against the County; and (8) eighth cause of action for negligent training and supervision under New York law, as against the County; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 7, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge